## HOWELL ELECTRIC MOTORS CO. v. UNITED STATES et al.

No. 10736.

United States Court of Appeals
Sixth Circuit.

March 7, 1949.

Edward S. Reid, Jr. and Wm. G. Butler, both of Detroit, Mich. (Miller, Canfield, Paddock & Stone, of Detroit, Mich., of counsel), for appellant.

Newell A. Clapp, of Washington, D. C. (H. G. Morison and Newell A. Clapp, both of Washington, D. C., Thomas P. Thornton, and Roger P. O'Connor, both of Detroit, Mich. and Oscar H. Davis and Robert Mandel, both of Washington, D. C., on the brief), for appellees.

Before ALLEN, MARTIN and McALLISTER, Circuit Judges.

## PER CURIAM.

The sole question presented by this appeal is whether the second amendment of the Renegotiation Act, 57 Stat. 347, 50 U.S.C.A. Appendix § 1191, may constitutionally be given retroactive application to appellant's war contracts upon which performance had been completed and final payment had been made during the period from April 28, 1942, to December 31, 1942. The second amendment was enacted July 1, 1943, and appellant concedes that it was intended by Congress to be retroactive in its scope. In an action brought by the United States and the board of directors of the R.F.C. to recover a judgment for excessive war profits less certain tax credits as determined by the R.F.C. Price Adjustment Board, the District Court determined that the statute is valid and constitutional as retroactively applied, and entered judgment for the appellees.

The pertinent subsections of the second amendment provided that all of the provisions of § 403 of the Sixth Supplemental National Defense Appropriation Act of 1942 as amended should be construed to apply to subsidiaries of the R.F.C. to whom 37% of appellant's sales for the fiscal year 1942 were made.

Subsection (c) of § 403 of the Renegotiation Act as rewritten in the first amendment, subsection (c)(6), contains the following provision:

"This subsection (c) shall be applicable to all contracts and subcontracts hereafter made and to all contracts and subcontracts heretofore made, whether or not such contracts or subcontracts contain a renegotiation or recapture clause, unless (i) final payment pursuant to such contract or subcontract was made prior to April 28, 1942 * * *." 56 Stat. 984.

The above subsection plainly covers the precise transactions in controversy here because final payment was made between April 28, 1942, and December 31, 1942, that is, not prior to April 28, 1942.

We think the District Court correctly held that the statute is constitutional as applied retroactively to these fully completed contracts. The broad prin-

ciples of its constitutionality have been stated previously by this court in Lichter v. United States, 6 Cir., 160 F.2d 329, which, together with two other renegotiation cases, was affirmed by the Supreme Court in 334 U.S. 742, 68 S.Ct. 1294. Cf. Lincoln Electric Co. v. Forrestal, Secretary, 334 U.S. 841, 68 S.Ct. 1510. In the Lichter case the Supreme Court specifically held, 334 U.S. pages 787-788, 68 S.Ct. pages 1317, 1318, that the renegotiation of war contracts was not a taking of private property for public use, and that the collection of renegotiated excessive profits on a war subcontract is not a deprivation of property without due process of law. It was also specifically held that the Renegotiation Act and its amendments heve been properly applied to contracts entered into before their enactment. While in the Lichter case the payments had not been fully made, as here, the contracts had been otherwise fully performed. We think the mere circumstance that the contractor here has received full remuneration on the transactions involved is a distinction without substance. Appellant's contention that the Constitution has been violated if these payments may now be recovered by the Government is based on the proposition that this money belongs to appellant as payment for performance of a valid contract. However, its right to receive and retain the payment depends upon the validity of the transaction out of which the payment arose. If Congress, within the exercise of its war powers, may reach back and alter war contracts, which is unquestionably true, Lichter v. United States, supra, it may also provide for the recovery of payments made under such contracts. When the war contract fixes a price which is found to be excessive, the contractor will be unjustly enriched if it is permitted to retain the full proceeds. As the Renegotiation Act was within the constitutional powers of Congress in reducing existing property rights, and in its retroactive application thereto, it is equally constitutional in its application to payments received under war contracts and growing out of those pro-

perty rights, and in its retroactive application thereto.

 It is settled law that the retroactive reach of a statute may constitutionally cover property rights that have vested, Louisville & Nashville R. Co. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.,N.S, 671, and also may cover payments already received. Welch v. Henry, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87, 118 A.L.R. 1142; United States v. Hudson, 299 U.S. 498, 57 S.Ct. 309, 81 L. Ed. 370. None of these cases involved the exercise of the war power of Congress; but if, apart from the war emergency, legislation repealing an exemption applicable to income already received was valid, as in the Welch case, clearly Congress has not less power in dealing with the problem of recapturing excess war profits.

The judgment of the District Court is affirmed.